IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

In Re:

PICACHO HILLS UTILITY COMPANY, INC.,

    Debtor.                                     Bankruptcy Case No. 13-10742-t7

PICACHO HILLS DEVELOPMENT COMPANY, INC.,

    Defendant/Appellant,                      Adversary Case No. 16-01007-t

v.                                            U.S.D.C. Appeal No. 17-cv-1260 MV/JHR

CLARKE C. COLL, *Chapter 7 Trustee*,

    Plaintiff/Appellee.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This case was referred to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." [Doc. 2, p. 1]. The Court is cognizant of the presumption of oral argument in bankruptcy appeals; however, the Court finds that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument[]" in this case. Fed. R. Bankr. P. 8019(b)(3). Having studied the parties' briefs, the appellate record, and the pertinent law, the Court recommends that the Bankruptcy Court's decision granting Trustee Clarke C. Coll summary judgment be affirmed in part and reversed in part, and that this case be remanded to the Bankruptcy Court for further proceedings.

## I. THE PARTIES

Before delving into the facts of this case it is important to understand the identity of the parties. Picacho Hills Utility Company, Inc. ("the Utility"), is the Debtor. Picacho Hills Development Company, Inc. ("Development Company"), is the Defendant/Appellant here. Clarke C. Coll is the Chapter 7 Trustee ("the Trustee"), Plaintiff below and Appellee here. The New Mexico Public Utility Commission was succeeded by the New Mexico Public Regulation Commission, which entered an Order in 2010 creating a debt in favor of the Utility. Both are referred to herein as "the Commission."

## II. BACKGROUND

The Utility filed for Chapter 11 bankruptcy on March 7, 2013. [Doc. 3, p. 4]. The case was converted to Chapter 7, and the Trustee was appointed on September 17, 2014. [Doc. 3, p. 4]. The Trustee filed an adversary proceeding against Development Company on February 12, 2016. [Doc. 3, p. 4]. The parties stipulated to certain undisputed material facts for the purposes of the Bankruptcy Court ruling on motions for summary judgment on July 18, 2017. [Doc. 7, p. 29].

### A) Facts Pertaining to the Old Tank Land Claim

Prior to 1991, the Development Company operated the Utility. [Doc. 7, p. 29]. On September 20, 1991, the Utility filed an application with the Commission for a Certificate of Public Convenience and Necessity as a water and sewer utility. [Doc. 7, p. 37]. Subsequently, in its Final Order in Case No. 2418, the Commission ordered Development Company to convey all utility assets to the Utility, including real property used in the utility as a tank site (the "Old Tank Land"). [Doc. 7, p. 29; *see* Doc. 3, pp. 24, 44, 50]. However, the Development Company never conveyed the Old Tank Land to the Utility. Instead, the Development Company conveyed the Old Tank Land to SRI Realty Fund VI as two separate lots (46 and 47). SRI subsequently sold lot 46 to a third

party on August 31, 2007, for $84,000, and transferred lot 47 for an undisclosed amount. [Doc. 7, p. 30].

On or about October 23, 2008, the Commission initiated an investigation of the Utility. [Doc. 7, p. 38]. Thereafter, on May 26, 2010 the Commission issued a Final Recommended Decision ("FRD"). In the FRD the Commission found that the Old Tank Land should have belonged to the Utility when the land was sold by the Development Company. The FRD therefore proposed to order the Development Company to reimburse the Utility for the purchase price of the Old Tank Land in the amount of $168,000. [Doc. 7, p. 30; *see* Doc. 5, pp. 4-5, Doc. 6, pp. 4, 9]. On August 12, 2010, the New Mexico Public Regulation Commission adopted, approved and accepted the FRD. [Doc. 7, p. 38; *see* Doc. 6, pp. 8-17]. Neither the Commission nor any other party took any further legal action to recover the funds from the Development Company prior to the trustee filing the instant case on February 12, 2016. [Doc. 7, p. 30].

**B) Facts Pertaining to the New Water Tank Land**

On September 2, 2010, creditor Bank of the Rio Grande filed a Receiver Action against the Utility and others in New Mexico State Court. [Doc. 7, p. 30]. A Receiver was appointed on November 14, 2011. [Doc. 7, p. 30]. Ultimately, the Receiver negotiated the sale of the receivership assets to Dona Ana Mutual Domestic Water Consumers Association ("Dona Ana WCA") for $2,250,000.00. [Doc. 7, p. 31].

On March 7, 2013 ("the Petition Date"), the Utility filed for Chapter 11 Bankruptcy. [Doc. 7, p. 30]. On the Petition Date, the New Tank Land was titled in the name of the Development Company and used as part of the Utility. [Doc. 7, p. 31]. As part of the Receivership sale, Dona Ana WCA required clear title to all Receivership assets. [Doc. 7, p.31]. In order to get clean title, Dona Ana WCA negotiated an agreement with the Development Company in which the

3

Development Company agreed to transfer its interest in the New Tank Land in exchange for certain consideration ($100,000.00). [Doc. 7, p. 31, *see* Doc. 6, pp. 22-25]. The Utility never sought approval from the New Mexico Public Regulation Commission to transfer its interest in the New Tank Land to the Development Company. [Doc. 7, p. 31]. In order to effectuate the sale of the Receivership assets the Receiver reduced the amount the Utility received from the sale of the Receivership assets in the amount that the Development Company received from Dona Ana WCA ($100,000.00).

### C) The Bankruptcy Court's Grant of Summary Judgment

The Bankruptcy Court granted the Trustee's motion seeking summary judgment "for the most part" on December 1, 2017 and denied Development Company's cross-motion. [Doc. 7, p. 75]. Pertinent here, the Bankruptcy Court found that the Trustee had standing to enforce the 2010 Commission Order as a matter of state law. [Doc. 7, p. 81]. The court so found even though the pertinent statute makes no mention of a Utility's right to enforce a Commission Order. To wit, the court noted that "[t]here is no New Mexico case law on whether a utility that obtains a favorable Commission order may enforce it." [Doc. 7, p. 81]. Nonetheless, the court found a private right of action under the pertinent statute and concluded that "in the narrow context of Commission orders specifically benefiting New Mexico utilities, such utilities have standing to enforce the orders." [Doc. 7, p. 82].

Alternatively, the Bankruptcy Court found standing under 11 U.S.C. § 542(b), which provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee…" *Id.* [Doc. 7, pp. 82-84]. Specifically, the court held that "the 2010 Commission Order is a final order that established a $168,000 debt. The debt is past due, has been liquidated, and is subject to turnover.

4

There is no dispute about Development Co's obligation to pay it." [Doc. 7, pp. 83-84]. Contrary to Development Company's argument, the Bankruptcy Court also found that no statute of limitations applied to preclude the recovery of the $168,000.00 debt. [Doc. 7, p. 84]. As such, the Bankruptcy Court ordered Development Company to turnover $168,000.00 to the Trustee. [Doc. 7, p. 86].

As to the New Tank Land, the Bankruptcy Court ruled in favor of the trustee, ordering Development Company to turn over $100,000 to the estate. [Doc. 7, p. 85]. The Bankruptcy Court reasoned that, under New Mexico law, Commission approval was required for the conveyance of the New Water Tank Land, rendering the 2000 conveyance by Development Company to Dona Ana WCA void and of no effect. [Doc. 7, p. 85 (quoting NMSA 1978, § 62-6-12)]. The Bankruptcy Court therefore ruled that the $100,000 should have been paid to the bankruptcy estate, not to Development Company. [Doc. 7, p. 85].

Development Company appeals both grants of summary judgment.

### III. LEGAL STANDARDS

The district court has appellate jurisdiction to hear appeals from final judgments and orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The Court reviews "questions of law, including the proper application of the Bankruptcy Code's turnover provision, *de novo*." *In re Auld*, 561 B.R. 512, 515 (B.A.P. 10th Cir. 2017). In adversary proceedings, Federal Rule of Civil Procedure 56 applies. *In re Ogden*, 314 F.3d 1190, 1195 (10th Cir. 2002) (citing Fed. R. Bank. P. 7056). Thus, summary judgment is warranted if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A grant of summary judgment in a bankruptcy proceeding is reviewed de novo, applying the same legal

standards as the court below. *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935, 940 (D.N.M. 2008).

## IV. ANALYSIS

**A) The Bankruptcy Court properly granted summary judgment to the Trustee as to the Old Water Tank Land, and the Court should affirm the Bankruptcy Court's Order requiring Development Company to turnover $168,000.00 to the estate.**

The Bankruptcy Court granted summary judgment to the Trustee on his turnover claim under 11 U.S.C. § 542(b) pertaining to the Old Water Tank Land, ordering Development Company to turn $168,000.00 over to the estate. Development Company argues that Bankruptcy Court's summary judgment conclusions should be reversed and that it should be granted judgment as a matter of law. For the reasons that follow, the Court disagrees and recommends that the Bankruptcy Court's order be affirmed as to the $168,000.00.

**1)** *Standing to recover the $168,000.00 under NMSA 1978, § 62-12-1.*

The first question raised on appeal is one of standing, insofar as Development Company asserts that the Trustee did not have the requisite standing to enforce the 2010 Commission Order. The Bankruptcy Court disagreed, opining to the existence of a private right of action under NMSA 1978, § 62-12-1. [*See* Doc. 7, p. 82].

Section 62-12-1 provides:

> Whenever *the commission* shall be of the opinion that any person or utility is failing or omitting or about to fail or omit to do anything required of it by this act or by any order of the commission, or is doing anything or about to do anything, or permitting anything or about to permit anything to be done, contrary to or in violation of this act or any order of the commission, *it may direct the attorney general of New Mexico to commence an action or proceeding* in the district court in and of the county or Santa Fe, or in the district court of the county in which the complaint or controversy arose, in the name of the state of New Mexico for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction. *The attorney general of New Mexico shall thereupon begin such action or proceeding by petition to such court, alleging the violation or threatened violation complained of, and praying for appropriate relief*

> *by way of mandamus or injunction.* It shall thereupon be the duty of the court to specify a time, not exceeding thirty days after the service of the copy of the petition, within which the public utility or person complained or must plead, and in the meantime said public utility or person may for good cause shown be restrained. In case of default, the court shall immediately inquire into the facts and circumstances of the case. *Such corporations or persons and the court may deem necessary or proper to be joined as parties, in order to make its judgment, order or writ effective, may be joined as parties.* The final judgment in any such action or proceeding shall either dismiss the action or proceeding or direct that the writ of mandamus or injunction issue or be made permanent as prayed for in the petition, or in such modified or other form as will afford appropriate relief. An appeal may be taken as in other civil actions.

*Id.* (emphasis added).

Development Company argues that "Section 62-12-1 is clear and unambiguous" insofar as "only the Commission may bring an action to enforce its order and that any such action may only be filed by the New Mexico Attorney General in New Mexico state Court." [Doc. 12, pp. 16-17]. As such, Development Company argues the Trustee lacks standing to enforce the Commission Order. [*Id.*]. As noted above, the Bankruptcy Court disagreed, finding an implied right of action under the statute. However, after studying the applicable law, this Court cannot agree with the Bankruptcy Court's conclusion.

"The question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (citations omitted). In determining whether a statute implies a private right of action, New Mexico, like the federal courts, is guided by the first three factors set forth in *Cort v. Ash*, 422 U.S. 66, 78 (1975). *See Cates v. Mosher Enterprises, Inc.*, 2017-NMCA-063, ¶ 7, 403 P.3d 687, 690 (citing *Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 31, 346 P.3d 1136, 1146). Those factors are:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? [and] (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

7

*Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012, ¶ 31, 346 P.3d 1136, 1146 (quoted authority omitted). The Court accordingly finds guidance in the Supreme Court's analysis of a private right of action under federal law. In this regard, the Supreme Court has stated that "a private right of action … is not created by mere implication, but must be 'unambiguously conferred.'" *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1387–88, 191 L. Ed. 2d 471 (2015). Thus, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Statutory intent on this latter point is determinative. . . . [for] [w]ithout it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87.

Applying the *Cort* factors, the Bankruptcy Court concluded that, "in the narrow context of Commission orders specially benefitting New Mexico utilities, such utilities have standing to enforce the orders." [Doc. 7, p. 82]. The court so found because the Commission Order "specially benefits Debtor and no one else," and because giving the Trustee (standing in the shoes of the Utility) standing would assist the underlying purpose of the legislative scheme. [Doc. 7, p. 82].

While this Court can follow the Bankruptcy Court's reasoning, it must depart from its conclusion, for several reasons. First, "as with any case involving the interpretation of a statute, [my] analysis must begin with the language of the statute itself." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (citations omitted). Here, the statute is silent as to a private right or private remedy benefitting New Mexico utilities. Therefore, this Court cannot agree that the statute intended to create a private right of action for utilities to enforce Commission Orders.

Application of the *Cort* factors confirms this view. The statute was not enacted for the special benefit of a class, it was enacted to secure the enforcement of the Commission's Orders.

Likewise, the statute's silence as to a private right of action speaks volumes, as the statute confers neither a private right or a private remedy. *Compare, e.g.*, *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017) ("We 'will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.'") (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985)). Instead, the statute explicitly confers standing on the Attorney General, permits only the remedies of mandamus or injunctive relief, and is entirely permissive in terms of joinder of parties. NMSA 1978, § 62-12-1; *compare Nat'l Tr. for Historic Pres. v. City of Albuquerque*, 1994-NMCA-057, ¶ 12, 117 N.M. 590, 594, 874 P.2d 798, 802 (When "the governing statute is silent regarding who may bring a statutorily recognized action to require a public agency to comply with state law, one who is 'injured' by the allegedly unlawful conduct ordinarily may bring suit."). Finally, while the Court agrees that a private right would further the legislative scheme, the fact remains that the statute creates neither a private right nor a private remedy in favor of New Mexico utilities. That being the case, the Court is compelled to conclude that the New Mexico legislature did not intend to permit utilities to sue to enforce Commission Orders. Therefore, the Court agrees with Development Company that the Trustee lacked standing under Section 62-12-1 to enforce the 2010 Commission Order as a matter of state law. However, this finding does not end the matter.

2) ***Standing to recover the $168,000.00 under 11 U.S.C. § 542(b).***

The Bankruptcy Court alternatively found that the Trustee had standing to bring a turnover action under 11 U.S.C. § 542(b) to recover the $168,000.00. [Doc. 7, pp. 82-84]. On appeal, Development Company argues that the Trustee lacked standing to recover the debt and that the Bankruptcy Court erred in applying Section 542(b) to this case. For the reasons that follow, this

Court agrees with the Bankruptcy Court that the Trustee had standing to recover the debt under Section 542(b).

As noted above, Section 542(b) provides, in pertinent part, that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee…." 11 U.S.C. § 542(b). "Section 542(b) creates an action for turnover of matured debts owed to a bankrupt estate. These may be, for example, debts owed for accounts receivable, for judgments already obtained or for monies previously held in trust or in escrow." *In re National Enterprises, Inc.*, 128 B.R. 956, 959 (D. Va. 1991) (citations omitted); *see In re Cascade Roads, Inc.*, 34 F.3d 756, 762 (9th Cir. 1994) ("Accordingly, because the Claims Court judgment is a matured debt that the United States owes to Cascade, section 542(b) authorizes the Turnover Order…"). "An action under § 542(b) applies to a debt when the debt is undisputed and presently payable." *In re Infinity Home Health Care, LLC*, 2018 WL 5310659, *2 (Bankr. D.N.M. October 25, 2018). "[T]he test for whether turnover is appropriate is two-fold. First, the debt must be property of the estate. Second, it must be matured and payable on demand or on order." *In re Porretto*, 2012 WL 5177977, at *4 (Bankr. S.D. Tex. Oct. 18, 2012).

### a. The debt is property of the estate.

Relying on 11 U.S.C. § 542(a), Development Company argues that "the Chapter 7 Trustee should be prohibited from seeking turnover of an asset that does not belong to the Debtor's estate." [Doc. 12, p. 18]. This argument is premised on the fact that the Development Company did not maintain "possession, custody, or control" of the subject property "during the case." [Doc. 12, p. 17 (quoting 11 U.S.C. § 542(a))]. However, as the Trustee correctly argues, Sections 542(a) and 542(b) are distinct. [*See* Doc. 15, p. 19]; *see, e.g.*, *In re Falzerano*, 686 F.3d 885, 887 (8th Cir. 2012) (discussing turnover claims under Section 542(a)). Development Company is correct that,

10

under Section 542(a), "possession, custody or control" of property of the estate after the bankruptcy petition is filed is required to deliver the property to the trustee. *See, e.g.*, *In re Pyatt*, 486 F.3d 423, 428 (8th Cir. 2007). However, "[t]he fact that § 542(a) specifically allows a trustee to recover either the property itself, or the value of such property, clearly establishes that a party need not be in actual possession of the property at the time of the turnover demand to fall within the scope of § 542(a)." *In re Ruiz*, 455 B.R. 745, 752 (B.A.P. 10th Cir. 2011). Moreover, Section 542(b) contains no such language, requiring only that the debt be property of the estate that is matured. In other words, there is no requirement that the entity that owes a debt to the estate maintain possession, custody or control over the subject funds "during the case." *See, e. g., Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (discussing the "negative-implication" canon of statutory construction, i.e., the canon "expressio unius est exclusio alterius").

That being established, the question remains: did the 2010 Commission Order create a property interest that was held by the Utility Company? Having studied the pertinent law, the Court concludes that the answer to this question is "yes." The commencement of a bankruptcy case "creates an estate." 11 U.S.C. § 541(a). "Section 541(a)(1) provides that the property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case." *Parks v. FIA Card Servs., N.A.* (*In re Marshall*), 550 F.3d 1251, 1255 (10th Cir. 2008). In bankruptcy proceedings, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979); *In re Marshall*, 550 F.3d at 1255 (quotation marks omitted). "Once that state law determination is made, . . . we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate." *In re Marshall*, 550 F.3d at 1255 (internal quotation marks omitted). "[T]he scope of § 541 is broad and should be

generously construed, and an interest may be property of the estate even if it is 'novel or contingent.'" *In re Dittmar*, 618 F.3d 1199, 1207 (10th Cir. 2010).

Applying these principles here, the Court concludes that the 2010 Commission Order created a property interest held by the Utility Company. This result follows because "[a] pre-petition cause of action that a debtor holds under state law constitutes property of the bankruptcy estate." *In re Wright*, 2009 WL 3633811, at *3 (Bankr. D.N.M. Oct. 30, 2009) (citations omitted). Likewise, "[w]hen a debtor has obtained a prepetition judgment against another party, the estate succeeds to all rights under such judgment." *In re Mehlhaff*, 491 B.R. 898, 902 (B.A.P. 8th Cir. 2013) (citations omitted). As is discussed further below, the Court concludes that the 2010 Commission Order is analogous to a state court judgment. Therefore, the trustee succeeded to the Utility Company's rights as set forth in that judgment, rendering the $168,000.00 debt property of the estate.

### b. The debt is matured.

Applying these principles to a state court judgment, the Seventh Circuit has held that debts accrued as a result of valid final orders of state courts are subject to turnover under 11 U.S.C. § 542(b). *See, e.g.*, *In re Gallo*, 573 F.3d 433, 440 (7th Cir. 2009); *see also In re Porretto*, 2012 WL 5177977, at *4 (Bankr. S.D. Tex. Oct. 18, 2012). True, the 2010 Commission Order is not technically a valid final order (or judgment) of a state court, but for all intents and purposes it is.

Black's Law Dictionary defines a "judgment" as "[a] court's final determination of the rights and obligations of the parties in a case." Black's Law Dictionary, 413 (4th Pocket Ed. 2011). It further defines a "money judgment" as "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." *Id.* at 414. In New Mexico, "administrative adjudicative determinations may be given preclusive effect if rendered under

conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 12, 115 N.M. 293, 298, 850 P.2d 996, 1001. Applying *Shovelin*, the New Mexico Court of Appeals has held that "for the purposes of claim preclusion, the grievance board's decision is considered a final judgment." *Armijo v. City of Espanola*, 2016-NMCA-086, ¶ 8, 382 P.3d 957, 959, *cert. denied* (Sept. 22, 2016). Issue preclusion was also applied to administrative findings in *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 36, 274 P.3d 781, 791, and *Arrellano v. New Mexico Dept. of Health*, 2015 WL 1164426, at *4 (N.M. Ct. App. Feb. 9, 2015) (unpublished).

    Here, the Commission entered a final order on May 26, 2010, finding that the Old Tank Land should have belonged to the Utility when it was sold by the Development Company. It therefore ordered the Development Company to reimburse the Utility for the purchase price of the Old Tank Land in the amount of $168,000.00. [Doc. 7, p. 30; *see* Doc. 5, pp. 4-5, Doc. 6, pp. 4, 9]. The only question in determining whether the Commission Order is sufficiently analogous to a money judgment is, therefore, whether the Development Company had a full and fair opportunity to litigate the issues addressed therein before the Commission. The Court concludes that it did, for several reasons. First, the proceedings before the Commission were of record. *See* NMSA 1978 § 62-11-3. Likewise, the Development Company could have appealed the Commission Order to the New Mexico Supreme Court. NMSA 1978 § 62-11-1. Such appeals are governed by the New Mexico Rules of Appellate Procedure for Civil Cases. NMSA 1978 § 62-11-2. Moreover, the proceedings before the Commission clearly show that Development Company had the opportunity to litigate the existence of the $168,000.00 debt. Therefore, the Commission Order created a debt, that was matured and payable on order, and the debt is subject to turnover under Section 542(b).

### 3) *Applicability of a Statute of Limitations*

Finally, Development Company argues that the turnover action was barred by a state statute of limitations. The Bankruptcy Court held that "[i]t may well be that no limitations period applies to Commission Orders." [Doc. 7, p. 84]. This Court, however, has found that the Trustee did not have standing as a matter of state law to enforce the Commission Order. Therefore, whether there is a statute of limitations for enforcement of Commission Orders is irrelevant.

However, this was not the Bankruptcy Court's only conclusion. The Bankruptcy court held in the alternative that the 2010 Commission Order is analogous to a final judgment of a court of record, meaning the applicable statute of limitations was fourteen years. [Doc. 7, p. 84]. This Court agrees with this rationale. As noted above, the proceedings before the Commission were of record. See NMSA 1978 § 62-11-3. The Development Company could have appealed the Commission Order to the New Mexico Supreme Court. NMSA 1978 § 62-11-1. And, such appeals are governed by the New Mexico Rules of Appellate Procedure for Civil Cases. NMSA 1978 § 62-11-2. Therefore, NMSA 1978 § 37-1-2, applies, permitting the Utility fourteen years to file an action to collect the judgment entered by the Commission. *See id.* ("Actions founded upon any judgment of any court of the state may be brought within fourteen years from the date of the judgment, and not afterward. Actions founded upon any judgment of any court of record of any other state or territory of the United States, or of the federal courts, may be brought within the applicable period of limitation within that jurisdiction, not to exceed fourteen years from the date of the judgment, and not afterward.").

Additionally, the Development Company has failed to convince the Court that the Trustee's cause of action in this case, for turnover under Section 542(b), would be barred by a state statute of limitations. "[T]urnover claims are core matters as to which this Court has constitutional

14

authority to enter a final judgment, because the Trustee's claims for turnover stem 'from the bankruptcy itself.'" *In re Khan*, 2014 WL 10474969, at *6 (E.D.N.Y. Dec. 24, 2014*); see also* 28 U.S.C. § 157(b)(2)(E) ("Core proceedings include, but are not limited to-- … orders to turn over property of the estate.[.]"). And, as the Trustee argues, it may well be that there is no statute of limitations for turnover claims under Section 542(b). [Doc. 18, p. 15]. *See In re Swift*, 496 B.R. 89, 103 (Bankr. E.D.N.Y. 2013) ("Burton has not cited a single bankruptcy case that applied state law statute of limitations to a turnover claim under § 542, and this Court has found none.").

Regardless, "[t]he assertion that a claim is barred by the relevant statute of limitations is an affirmative defense, which the defendant bears the burden of proving." *See Adams v. Am. Med. Sys., Inc*., 705 Fed. Appx. 744, 746 (10th Cir. 2017) (unpublished); Fed. R. Civ. P. 8(c)(1); Rule 1-008(C) NMRA. Development Company, as the Defendant here, has not convinced the Court that the statute of limitations defense applies to bar the Trustee's turnover action under Section 542(b).

Therefore, the Court finds that no statute of limitations applies to bar the Trustee's turnover claim under Section 542(b). Indeed, if a statute of limitations applies to the facts of this case, it is the one contemplated by NMSA 1978 § 37-1-2. As the Trustee's turnover action was brought well within this period, Development Company's argument that it should be barred by another state statute of limitations is rejected.

### B) The Bankruptcy Court made improper factual inferences against Development Company as to the New Water Tank Land at summary judgment; therefore, its order compelling turnover of $100,000.00 must be reversed and remanded for further proceedings.

The Bankruptcy Court, applying state law, determined that the conveyance of the New Tank Land by the Utility to Development Company was void. [Doc. 7, pp. 85-86]. In reaching this conclusion the Bankruptcy Court had to find (and indeed found) that the parcel was "an operating unit or system or any substantial part thereof" of the Utility, and that the conveyance was not in

15

the ordinary course of business. *See* NMSA 1978, § 62-6-12. Development Company argues that the Bankruptcy Court's factual findings in this regard were "clearly erroneous" because they were "outside the stipulated facts." [Doc. 12, p.23-24 ("The factual findings made by the bankruptcy court were 'clearly erroneous' as they were not facts that were stipulated to by the parties.")]. Compounding the confusion, the Trustee argues that the Bankruptcy Court's findings are reviewed for "clear error." [Doc. 15, p. 23 (citing *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009)]. However, "clear error" is not the standard. (*La Resolana* examined an appeal from a bench trial, not a ruling on summary judgment. *See* 555 F.3d at 1177). Thus, the parties' initial premises are flawed. Rather, "[b]ecause summary judgment may only be granted where there is no genuine issue of material fact, any purported 'factual findings' of the bankruptcy court cannot be 'factual findings' as to disputed issues of fact, but rather are conclusions as a matter of law that no genuine issue of material fact exists; such conclusions of law are, of course, subject to plenary review.... [A]ny application of the 'clearly erroneous' standard is, in itself, clearly erroneous." *In re Seay*, 215 B.R. 780, 785 (B.A.P. 10th Cir. 1997) (quoted authority omitted).

This concept is not novel; courts are not to weigh evidence at summary judgment. *See Davilla v. Enable Midstream Partners L.P.*, --- F.3d ----, 2019 WL 150627, at *3 (10th Cir. Jan. 10, 2019) (citing Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (The question at summary judgment is: "has discovery yielded a genuine dispute of 'material fact' or is the movant 'entitled to judgment' on a claim or issue without any need to weigh evidence."). Nor is a Court free to find facts at summary judgment that go beyond the stipulations of the parties. *See In re Durability Inc.*, 212 F.3d 551, 555 (10th Cir. 2000). Thus, at summary judgment, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* While a mere scintilla of evidence

supporting the opposing party's position will not suffice to stave off summary judgment, *see Ericsson, Inc. v. CoreFirst Bank & Tr.*, --- F. App'x ----, 2018 WL 3997322, at *2 (10th Cir. Aug. 20, 2018) (unpublished) (citing *Keith v. Koerner*, 843 F.3d 833, 852 (10th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), "summary judgment should not be employed to deprive litigants 'of their right to a full hearing on the merits, if any real issue of fact is tendered.'" *In re Durability Inc.*, 212 F.3d 551, 556 (10th Cir. 2000) (quoted authority omitted). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Leone*, 810 F.3d at 1153 (citation and quotations omitted).

Thus, a district court may not make inferences against the party opposing summary judgment where there is a genuine dispute as to a material fact. "A genuine dispute arises where the available evidence would allow a rational jury to accept either party's allegation of a particular fact.... But only facts that 'could have an effect on the outcome' of a claim qualify as 'material.'" *Davilla v. Enable Midstream Partners L.P.*, 2019 WL 150627, at *3 (10th Cir. Jan. 10, 2019) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)).

Neither party briefed whether the disputed facts are material, but the Court finds that they are, and there is little doubt that the dispute is genuine between the parties. If the Bankruptcy Court's inferences stand, then the Utility's conveyance of the new tank land to Development Company is void, and the Bankruptcy Court properly ordered the turnover of the $100,000.00

associated therewith. Thus, the question is, were these "factual findings" by the Bankruptcy Court proper inferences from the stipulated facts submitted by the parties?

This Court finds that they were not. Rather, the factual findings of the bankruptcy Court were adverse inferences against Development Company's position. In fact, there is no evidence that the new water tank parcel was "an operating unit or system or any substantial part thereof," *see* NMSA 1978, § 62-6-12, of the Utility. The only stipulated fact in the record concerning the new water tank parcel is that "[t]he New Tank Land and the Storage Land were *used* by the Debtor in the operation of the utility." [Doc, 7, p. 31 (emphasis added)]. Additionally, there is no evidence that the conveyance of the new water tank parcel to the Development Company was not a "transaction" "in the ordinary course of business" so as to be exempted from Commission approval under Section 62-6-12*. See id.* Finally, and perhaps most importantly, there is no evidence that the Utility "could not function" without the new water tank parcel, as the Bankruptcy Court found. [Doc. 7, p. 85].

To the contrary, argues the trustee, "[t]he record contains ample evidence supporting these findings by the Bankruptcy Court." [Doc. 15, p. 23]. However, the Court finds that the Bankruptcy Court's inferences from the stipulated facts were not supported by the evidence to a degree sufficient to justify a grant of summary judgment in the Trustee's favor. Rather, a reasonable jury could find that the new water tank parcel was simply an asset of the Utility, subject to transactions in the ordinary course of business.

The Trustee's best argument in support of the Bankruptcy Court's inferences is its reference to a fact: "the State Court approved a reduction in the amounts received by the Receiver from Dona Ana WCA under the Agreement because it 'permits the buyer to receive clear title to *essential* portions of the water and sewer systems.'" [Doc. 15, p. 24 (citing Record, p. 170 (Doc.

7, p. 3)) (emphasis added). The Trustee's position raises a valid question: how could the New Tank Land be "essential" to the Utility's operation and not be a "substantial" part of the "public utility plant?" However, the Bankruptcy Court was not free to bridge the gap from the stipulated facts presented by the parties at summary judgment and the state court's determination that the parcel at issue was "essential." At best, the Bankruptcy Court should have determined that a genuine issue of fact precluded summary judgment in the Trustee's favor, and commenced further hearings aimed at establishing the actual use and purpose of the new tank land at the time of the sale to Dona Ana WCA.

Because the Bankruptcy Court made findings concerning disputed facts at summary judgment this Court has no choice but to recommend that the District Judge reverse and remand the grant of summary judgment to the trustee as to the new water tank parcel. *See United States v. Mills*, 372 F.2d 693, 697 (10th Cir. 1966); *Allen v. Muskogee, Okl.*, 119 F.3d 837, 840 (10th Cir. 1997). In other words, the Bankruptcy Judge's order requiring Development Company to turn over $100,000.00 to the estate should be set aside and remanded so that the Bankruptcy Court may then hold whatever proceedings it deems necessary to resolve the factual questions described above.

## V. CONCLUSION

In sum, this Court recommends that the Bankruptcy Court's grant of summary judgment to the Trustee be affirmed in part and reversed in part. The Court agrees with the Bankruptcy Court's conclusions that the Trustee had standing to seek the turnover of the $168,000.00 associated with the Old Tank Land, and that no statute of limitations applies to bar that claim. However, because the Bankruptcy Court made adverse inferences against Development Company at summary judgment, the portion of its Order requiring Development Company to turnover the $100,000.00 associated with the New Tank Land should be remanded for further proceedings.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**